IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

BABAJIDE ADESAYO

Criminal Action No.

1:24-CR-154-MHC-RGV

**United States' Response in Opposition to Defendant's Perfected Motion to Suppress Evidence Allegedly Obtained from a Border Search**

The United States of America, by Theodore S. Hertzberg, United States Attorney, and Kelly K. Connors, Assistant United States Attorney for the Northern District of Georgia, files this response in opposition to Defendant Adesayo's perfected motion to suppress evidence, (Doc. 81).

Adesayo's motion to suppress evidence should be denied because the border search doctrine authorized the detention and search of his electronic devices. Adesayo argues that evidence recovered from the border search of his devices must be suppressed because the forensic extractions of the devices occurred at the Homeland Security Investigations' ("HSI's") field office, rather than at an international border or the equivalent. (*Id.* at 1). He fails to cite a single case to support this position and ignores the breadth of Eleventh Circuit case law

upholding warrantless border searches with similar facts—electronic devices that were detained at the border and then taken elsewhere for extraction. Because a warrant was not required to search Adesayo's devices after they were properly detained at the Atlanta airport, the Court should deny his motion. The motion should also be denied because law enforcement acted in good faith based on extensive Eleventh Circuit case law authorizing warrantless searches of electronic devices detained at the border.

## A. Procedural History

On June 11, 2024, the grand jury charged Adesayo with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and sixteen counts of transactional money laundering, in violation of 18 U.S.C. § 1957. (Doc. 8). The indictment alleges that Adesayo and co-defendant Efemena Igbe received proceeds of romance scams from victims located throughout the United States. (*Id.* at 10). They then laundered those proceeds using bank accounts opened in the names of various companies. (*Id.* at 11-12). Adesayo was arrested on June 13, 2024. (Doc. 21).

Adesayo filed a preliminary motion to suppress evidence. (Doc. 68). In this preliminary motion, Adesayo sought suppression of evidence seized pursuant to a border search on April 19, 2022. (*Id.* at 1). Although he acknowledged that his

2

cellphones were seized and searched upon return to Atlanta from Lagos, Nigeria, Adesayo nonetheless argued that an evidentiary hearing was needed "to determine the validity of the legal conclusion that [his] three phones were seized and searched pursuant to the border search authority." (*Id.* at 1-2). He further asserted that a hearing was necessary to "determine the circumstances surrounding his stop on April 19, 2022," including why he was stopped. (*Id.*).

The Court held an evidentiary hearing on May 14, 2025. (Doc. 80). Following the hearing, the Court provided an opportunity for Adesayo to perfect his suppression motion. (*Id.* at 34-35). In the perfected motion, he raised for the first time that the evidence should be suppressed because the forensic extraction of the cellphones did not occur at the Atlanta airport and that no testimony was offered to establish where they were searched.[1] (Doc. 81 at 3). The perfected

---

[1] The government attaches as Exhibit 1, a declaration from Christopher Lehmann, who conducted the forensic extraction. *See* Ex. 1. As set forth herein, Adesayo's argument that suppression is necessary because the extraction occurred at a location other than the border or functional equivalent is incorrect and unsupported by Eleventh Circuit precedent. Should the Court determine that the extraction had to occur at the border or functional equivalent, the government respectfully requests that the Court reopen the evidentiary hearing so that additional evidence can be presented to address Adesayo's newly-raised argument.

motion no longer asserts that "the circumstances surrounding his stop" may form a basis for suppression, and that argument is thus waived.[2]

## B. Evidentiary Hearing

Customs and Border Patrol Officer William Graham testified that he encountered Adesayo on April 19, 2022, after Adesayo arrived on an international flight from Nigeria. (Doc. 80 at 8-9). Officer Graham was assigned to the secondary inspection area, and he was working the baggage area. (*Id.*). Adesayo was referred for secondary inspection because a lookout had been placed on his record by HSI Special Agent Arthur "Tommy" Morrison. (*Id.* at 9-10). Officer Graham discussed the lookout with Agent Morrison before conducting an inspection of Adesayo's baggage. (*Id.* at 10). During the

---

[2] "Once a defendant has failed to make a proper pretrial request for suppression, the opportunity is waived unless the district court grants relief for good cause shown." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). Adesayo's preliminary motion made only passing reference to the circumstances surrounding the border search, and those allegations were not "sufficiently definite, specific, detailed, and nonconjectural" to support relief. (*See* Doc. 68 at 1-2); *Richardson* 764 F.2d at 1527. His perfected motion fails to explain how the circumstances surrounding the border search, such as why he was stopped, would entitle him to suppression, and the Court should consider this argument waived.

inspection, Officer Graham recovered several electronic devices, which were turned over to Agent Morrison who was on site at the airport. (*Id.* at 11).

Agent Morrison testified that he also encountered Adesayo on April 19, 2022, in the secondary inspection area. (*Id.* at 23). Agent Morrison was aware that Adesayo would be arriving on an international flight and had discussed Adesayo's arrival with FBI Special Agent Joel Zwiers. (*Id.*). Agent Morrison and Agent Zwiers had overlapping fraud investigations that involved Adesayo, and Agent Morrison had entered a lookout for Adesayo. (*Id.* at 24). When Adesayo was referred for a secondary inspection, Agent Morrison discussed the inspection with Officer Graham and explained the nature of the fraud investigation, including what types of items to search for. (*Id.* at 25). Officer Graham located multiple electronic devices and provided them to Agent Morrison, who then explained to Adesayo that the devices were being detained to do an exam. (*Id.* at 25-26).

Agent Morrison testified that he did not attempt to conduct a forensic examination of the devices at the airport. (*Id.* at 27). He explained that he had "a little bit of training in how to do the forensic exams," that there was one tower computer at the airport that had Cellebrite on it, that an extraction could take several hours, and that given the storage size of devices and the number of

devices, he decided to get assistance from the computer forensic division at HSI. (*Id.* at 27-30). Agent Morrison took the devices to the nearby HSI field office for the examination, and he returned the devices to Adesayo when the extraction was complete. (*Id.* at 30-33).

## ARGUMENT AND CITATION TO AUTHORITY

The Fourth Amendment provides, "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Reasonableness ordinarily requires that law enforcement obtain a warrant before searching for evidence of criminal activity. *Riley v. California*, 573 U.S. 373, 382 (2014). But the nation's borders produce one significant exception to the Fourth Amendment's restrictions. Routine searches of travelers and their belongings at an international border "are not subject to any requirement of reasonable suspicion, probable cause or warrant . . . ." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).

"Time and again, [the Supreme Court has] stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by

6

stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *United States v. Flores-Montana*, 541 U.S. 149, 152-153 (2004) (quoting *Ramsey*, 431 U.S. 606, 616 (1977)). Consistent with the United States' compelling interest to control what enters through its borders, courts have long given government agents broad authority to search vehicles and persons upon their entry into the United States, including their personal effects, to prevent unlawful merchandise from being brought into the United States. *Flores-Montano*, 541 U.S. at 152 ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."); *Alfaro-Moncada*, 607 F.3d at 728 (citing 19 U.S.C. § 1492) (same).

> The authority of the United States to search the baggage of arriving international travelers is based on its inherent sovereign authority to protect its territorial integrity. By reason of that authority, it is entitled to require that whoever seeks entry must establish the right to enter and to bring into the country whatever he may carry.

*Torres v. Puerto Rico*, 442 U.S. 465, 473-73 (1979).

Thus, border searches by their very nature are reasonable under the Fourth Amendment, and they do not require a warrant, probable cause, or reasonable suspicion. *Montoya de Hernandez*, 473 U.S. at 538; *Ramsey*, 431 U.S. at 616-18;

7

*Touset*, 890 F.3d at 1232-33. As the Eleventh Circuit has noted, "[b]ecause an individual's expectation of privacy is at its lowermost at border entry points, the officer need not possess any level of suspicion." *Denson v. United States*, 574 F.3d 1318, 1340 (11th Cir. 2009); *accord Touset*, 890 F.3d at 1233 ("We see no reason why the Fourth Amendment would require suspicion for a forensic search of an electronic device when it imposes no such requirement for a search of other personal property.").

Significantly, border searches need not take place at the actual border but may occur at places considered the "functional equivalent" of a border, such as at an airport where international flights arrive. *Almeida-Sanchez v. United States*, 413 U.S. 266, 273 (1973).

**1. The search of Adesayo's devices was a border search.**

Adesayo does not contest that the Atlanta airport is the functional equivalent of a border. Nor does he contest that his electronic devices were detained following a search of his baggage after he arrived at the Atlanta airport from an international flight. Officer Graham's testimony that he recovered the electronic devices during a search of Adesayo's baggage in the secondary inspection area of the international terminal was not rebutted, and Agent Morrison's testimony that

8

Officer Graham provided the devices to him immediately after the baggage search also was not rebutted.

Adesayo argues that removal of the electronic devices from the border in order to conduct a forensic examination of the devices erased the fact that the devices were originally detained at the border. He alleges that the government must establish that the HSI field office where the examination occurred is the functional equivalent of a border. But he cites to no authority requiring that a device properly detained at the border must be examined at the border or the functional equivalent of the border. Eleventh Circuit precedent refutes Adesayo's argument.

**A. The Eleventh Circuit has repeatedly upheld border searches of electronic devices where forensic examinations occurred away from the border.**

In numerous cases, the Eleventh Circuit has recognized that the forensic examination of electronic devices originally located and detained at the border were searched elsewhere, and in each case, the Circuit has upheld the forensic examination as a border search, for which a warrant was not required. The government was unable to find any Eleventh Circuit cases that suggested the Court must determine whether the HSI field office was the functional equivalent of the border, and Adesayo's analysis in this regard fails to advance his position.

9

Much like the facts presented here, in *Touset*, the Eleventh Circuit noted that the defendant "arrived on an international flight at the airport in Atlanta, Georgia" and had a lookout in the system due to suspected criminal activity. *Touset*, 890 F.3d at 1230. A CBP officer inspected Touset's luggage and detained several electronic devices. *Id.* A forensic examination of those devices was later performed by HSI computer forensic analysts. *Id.* Under these facts, the Eleventh Circuit held that the forensic examination of the devices was a border search that did not require reasonable suspicion or a warrant. *Id.* at 1232-37.

The Eleventh Circuit again weighed similar facts in *United States v. Pulido*, 133 F.4th 1256 (11th Cir. 2025). HSI placed a lookout on Pulido due to an ongoing investigation. Upon Pulido's return to the United States from Mexico, CBP officers stopped him and detained his electronic devices. *Id.* at 1265. The devices were then sent to the HSI agent investigating Pulido, and she provided the devices to a computer analyst who conducted a forensic examination of the devices.[3] *Id.* at 1265-66. The Eleventh Circuit confirmed that the forensic

---

[3] Pulido's devices were detained at the Dallas/Fort Worth airport and then transferred to HSI's Tampa office. *United States v. Pulido*, No. 20-cr-292-VMC-CPT, 2021 WL 3476600 (M.D. Fla. July 2, 2021), *report and recommendation adopted*, 2021 WL 3471696, at *1 (M.D. Fla. Aug. 6, 2021).

examination was a border search that did not violate the Fourth Amendment. *Id.* at 1273-75.

Notably, in *United States v. Quarles*, 2025 WL 1430866 (11th Cir. May 19, 2025), an initial forensic examination of electronic devices occurred at the cruise terminal at Port Canaveral and was conducted by a computer forensic analyst. *Id.* at *2. When the investigation was later transferred to HSI's Tampa office, the electronic devices were sent to the new case agent who was unaware that a full extraction had previously been completed. *Id.* at *2, *5. The Eleventh Circuit noted that "at the request of the prosecutor assigned to the case," the agent obtained a warrant to search the electronic devices, which the Circuit twice described as being done "in an abundance of caution." *Id*. at *2, *5-6. The Eleventh Circuit also expressed skepticism that a defendant may be able to raise a claim of unreasonable delay in obtaining a warrant to search an electronic device that had been seized at the border. *Id.* at *5. The Eleventh Circuit's sentiments in this case further illustrate that a warrant is not required to search electronic devices detained at the border and sent elsewhere for examination.

### B. This Court has previously rejected Adesayo's position.

Adesayo's position has already been rejected by this Court. In *United States v. Brown*, the Honorable Steven D. Grimberg adopted the report and

11

recommendation submitted by Magistrate Judge Justin S. Anand, which recommended denial of Brown's motion to suppress the search of his electronic devices. *United States v. Brown*, No. 1:20-CR-113-SDG-JSA, 2021 WL 3828797, *1 (N.D. Ga. Aug. 27, 2021). Brown's cell phone was initially detained at the Atlanta airport. *Id.* at *2. Two weeks later, an HSI agent provided the phone to a forensic analyst to have an extraction completed. *Id.* at *3. Brown argued that this later off-site search of his phone fell outside the scope of the border search exception. *Id.* Judge Grimberg rejected this argument, finding that "the border exception is not rendered inapplicable because a search initiated at a border ultimately is conducted at some physical or temporal remove." *Id.* at 3 (quoting *United States v. Kolsuz*, 890 F.3d 133, 142 (4th Cir. 2018), *as amended* (May 18, 2018)). While the forensic search of Brown's phone "occurred physically and temporally removed from the border," Judge Grimberg emphasized that the search was continuous and Brown had never regained an expectation of privacy in the phone. *Id.* at *3-4.

2. **Law enforcement had a good faith belief that Adesayo's electronic devices could be searched without a warrant.**

The exclusionary rule "is not an individual right." *Herring v. United States*, 555 U.S. 135, 141 (2009). The "sole purpose" of the exclusionary rule is "to deter future Fourth Amendment violations." *United States v. Smith*, 741 F.3d 1211, 1219

12

(11th Cir. 2013). Suppression is thus warranted "only if the officers were dishonest or reckless" or if they "could not have harbored an objectively reasonable belief" that the search was authorized. *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (quotation omitted).

There is no Eleventh Circuit precedent adopting Adesayo's argument that the forensic examination of electronic devices must occur at either an actual border or the functional equivalent of a border. As cited above, Eleventh Circuit precedent has upheld forensic examinations of devices detained at the border based on remarkably similar facts. Accordingly, even if the border search doctrine required forensic examinations of electronics to occur at a border location, the *Leon* good faith exception would apply. *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (holding that fruits of "a search conducted in reasonable reliance on binding precedent [are] not subject to the exclusionary rule"). Agents had an objectively good faith belief that the warrantless search of Adesayo's devices at the HSI office did not violate the Fourth Amendment because, under Eleventh Circuit precedent, a warrant was not required for a forensic examination of an electronic device at the border. *See Touset*, 890 F.3d at 1227.

## **CONCLUSION**

Longstanding border search authority permitted law enforcement to detain Adesayo's electronic devices when he reentered the United States after an international flight from Nigeria. The subsequent forensic examination of those devices did not require law enforcement to first seek a search warrant, regardless of where the examination took place, and law enforcement acted in good faith in accordance with Eleventh Circuit precedent. For all of these reasons, the Court should deny Adesayo's motion to suppress.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

/s/ KELLY K. CONNORS
*Assistant United States Attorney*
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov

14